**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Isaac Bisono; Joshua Perez; Lizbeth Bisono; and Vineliz Estevez,<br><br>*Plaintiffs*,<br><br>-against-<br><br>TVT Capital, LLC; and Andrew Fellus,<br><br>*Defendants.* | **COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Isaac Bisono; Joshua Perez; Lizbeth Bisono; and Vineliz Estevez (collectively, "Plaintiffs"), by and through their undersigned attorney, Mohammed Gangat, Esq., as and for this Complaint against defendants TVT Capital, LLC; and Andrew Fellus (collectively, "Defendants"), allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (i) unpaid overtime premium; (ii) liquidated damages; (iii) prejudgment and post judgment interest; and (iv) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (i) unpaid overtime premium; (ii) unpaid spread-of-hour premium; (iii) statutory penalties arising out of Defendants' failure to provide required wage and hour law notices; (iv) liquidated damages; (v) prejudgment and postjudgment interest; and (vi) attorneys' fees and costs.

1

3.     Plaintiffs further allege that, pursuant to New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, they are entitled to recover from Defendants for discrimination based on national origin: (i) compensatory and punitive damages; and (ii) attorneys' fees and costs.

4.     Plaintiffs further allege that, pursuant to New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York § 8-107 *et seq.*, they are entitled to recover from Defendants for discrimination based on national origin: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 201 et seq., and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiffs have satisfied all statutory prerequisites for filing this Complaint.

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the claims arose in this judicial district.

## PARTIES

7.     Plaintiff Isaac Bisono is an adult, over eighteen years old, and a resident of New York County, New York.

8.     Plaintiff Joshua Perez is an adult, over eighteen years old, and a resident of New York County, New York.

9.     Plaintiff Lizbeth Bisono is an adult, over eighteen years old, and a resident of New York County, New York.

10.     Plaintiff Vineliz Estevez is an adult, over eighteen years old, and a resident of Queens County, New York.

11.     Defendant TVT Capital, LLC (the "Entity Defendant"), is a Delaware limited liability company with a process services address of 8 Hunters Lane, Roslyn, NY, United States 11576.

12.     Upon information and belief, Defendant Andrew Fellus (the "Individual Defendant") is the Chief Executive Officer of the Entity Defendant.

13.     The Individual Defendant actively participates in the day-to-day operations of the Entity Defendant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2 and the Regulations thereunder, and is jointly and severally liable with the Entity Defendant.

14.     Upon information and belief, the Entity Defendant owns and operates a headquarters office located at 90 Broad St., 16th Fl, New York, NY 10004.

15.     Upon information and belief, the Entity Defendant provides financial funding services regarding the capital needs of small and mid-sized business entities. It establishes and facilitates funding between the small business lenders and small business owners.

16.     Upon information and belief, Defendants exercise control over the terms and conditions of their employees' employment, including Plaintiffs' employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

17.     Upon information and belief, at all times relevant to the allegations in this Complaint, the Entity Defendant was, and continues to be, an "enterprise engaged in commerce"

within the meaning of the FLSA in that at all relevant times it (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

18.    At all relevant times, the work performed by Plaintiffs was essential to the business owned and operated by Defendants.

19.    At all relevant times, Defendants knowingly and willfully misclassified Plaintiffs as independent contractors for whom Defendants were not required to pay overtime compensation.

20.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and NYLL.

21.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hours" premium in direct contravention of the NYLL.

22.    Defendants knowingly and willfully failed to accurately provide Plaintiffs their wage notices and wage statements in direct contravention of the New York Wage Theft Prevention Act.

23.    Defendants knowingly and willfully discriminated against Plaintiffs with no basis rather than the national origin. Defendants sweepingly terminated all Dominican employees, including Plaintiffs, while taking no action against employees of other national origin and ethnicity.

24.    Plaintiffs have satisfied all conditions precedent to the institution of this action or such conditions have been waived.


**-THIS PART LEFT INTENTIONALLY BLANK-**

## STATEMENT OF FACTS

***Plaintiff Isaac Bisono's Employment Information***

25.    In or around February 2018, Plaintiff Isaac Bisono ("Isaac") was hired by Defendants to work as a Contracts Administrator. He had a diverse list of duties and responsibilities including but not limited to drafting contracts, and risk assessment. Plaintiff Isaac was the liaison between the Entity Defendant's underwriters, external underwriters and brokers. He would also monitor the background reports, criminal histories, fraud histories, and credit histories of potential borrowers.

26.    On a day-to-day basis, Plaintiff Isaac reported to the supervisors of Defendants. He also had regular contact with Individual Defendant Andrew Fellus who would routinely assign him work, monitor his work performance, and direct the manner in which the work was performed.

27.    When Plaintiff Isaac started working for Defendants, he was told his schedule would be 9:30am to 6pm with a one-hour lunch break. However, during the relevant period, he in fact regularly worked outside of these hours to ensure all of his tasks were done. He was given a business email to communicate with his coworkers. Also, he was given access to a team business email to send the contracts he drafted to the brokers of Defendants.

28.    During the relevant period, Plaintiff Isaac never clocked in or out to track his work hours.

29.    From about February 2018 to about March 2020, Plaintiff Isaac worked about 5 days a week, from 9:30am to between about 6:30pm and 7:30pm without any uninterrupted lunch break. Additionally, the Individual Defendant and some other supervisors of Defendants, would text or call him and require him to work outside of shifts. During this period, he worked between about 45 and 50 hours per week.

30.     From about April 2020 to May 2020 and from September 2020 to February 2021, due to the COVID-19 Pandemic, Plaintiff Isaac worked from home for the majority of this period and worked more hours. He worked about 5 days a week, from 9:30am to between 6pm and 8pm. Additionally, the Individual Defendant and some other supervisors of Defendants, would text or call him and require him to work outside of shifts. During this period, he worked between about 50 and 55 hours per week.

31.     During the period of June 2020 to August 2020, which was during the COVID-19 Pandemic, Plaintiff Isaac was required by the Individual Defendant to go to an employee's house located in Long Island, which was a temporary office of Defendants, to work. During this period, Plaintiff Isaac would work at the temporary office about 2-3 days a week, from about 9:30am to about 6pm-6:30pm. Also, he would work from home for about 2-3 days a week, from about 9:30am to between 6pm and 8pm. Averagely, he worked between about 50 and 55 hours per week.

32.     During the employment, Plaintiff Isaac was paid at the fixed weekly rate regardless of the hours he worked. He was never compensated with an overtime premium rate for working more than 40 hours per week, nor was there an explicit understanding that his weekly rate would include overtime pay. He never received any accurate wage notice or statements.

33.     For the first two weeks of employment, he was paid $500 per week. From about March 2018 to about April 2018, he was paid $600 per week. From about May 2018 to about July 2018, he was paid $750 per week. From about August 2018 to about May 2020, he was paid $900 per week. From about June 2020 to February 2021, he was paid $1,000 per week.

34.     During the employment, Plaintiff Isaac received the commissions of the investments he partook in only two times. However, he never received any written commission policy or statement of commissions earned and received.

35.    For the last week of Plaintiff Isaac's employment, from February 1, 2021, to February 3, 2021, he did not receive any compensation for his work.

***Plaintiff Joshua Perez's Employment Information***

36.    In or around August 2018, Plaintiff Joshua Perez ("Joshua") was hired by Defendants to work as a Contracts Administrator. He had a diverse list of duties and responsibilities including but not limited to drafting contracts, and risk assessment. Plaintiff Joshua was the liaison between the Entity Defendant's underwriters, external underwriters and brokers. He would also monitor the background reports, criminal histories, fraud histories, and credit histories of potential borrowers.

37.    On a day-to-day basis, Plaintiff Joshua reported to the supervisors of Defendants. He also had regular contact with Individual Defendant Andrew Fellus who would routinely assign him work, monitor his work performance, and direct the manner in which the work was performed.

38.    When Plaintiff Joshua started working for Defendants, he was told his schedule would be 9:30am to 6pm with a one-hour lunch break. However, during the relevant period, he in fact regularly worked outside of these hours to ensure all of his tasks were done. He was given a business email to communicate with his coworkers. Also, he was given access to a team business email to send the contracts he drafted to the brokers of Defendants.

39.    During the relevant period, Plaintiff Joshua never clocked in or out to track his work hours.

40.    From about August 2018 to about December 2018, Plaintiff Joshua worked about 5 days a week, from about 9:30am to between 6pm and 8pm without any uninterrupted lunch break. Additionally, the Individual Defendant and some other supervisors of Defendants, would

text or call him and require him to work outside of shifts. During this period, he worked between about 45 and 50 hours per week.

41.    From about January 2019 to May 2020; and from about September 2020 to February 2021, Plaintiff Joshua was assigned more duties and worked about 5 days a week, from about 9:30am to between 6pm and 8pm without any uninterrupted lunch break. Additionally, the Individual Defendant and some other supervisors of Defendants, would text or call him and require him to work outside of shifts. During this period, he worked between about 50 and 55 hours per week.

42.    During the period of June 2020 to August 2020, which was during the COVID-19 Pandemic, Plaintiff Joshua was required by the Individual Defendant to go to an employee's house located in Long Island, which was a temporary office of Defendants, to work. During this period, Plaintiff Joshua would work at the temporary office about 2-3 days a week, from about 9:30am to about 6pm-6:30pm. Also, he would work from home for about 2-3 days a week, from about 9:30am to between 6pm and 8pm. Averagely, he worked between about 50 and 55 hours per week.

43.    During the employment, Plaintiff Joshua was paid at the fixed weekly rate regardless of the hours he worked. He was never compensated with an overtime premium rate for working more than 40 hours per week, nor was there an explicit understanding that his weekly rate would include overtime pay. He never received any accurate wage notice or statements.

44.    From about August 2018 to about December 13, 2018, he was paid $500 per week. From about December 14, 2018, to about January 3, 2019, he was paid $600 per week. From about January 4, 2019, to about May 10, 2019, he was paid $750 per week. From about May 11, 2019, to February 2021, he was paid $850 per week.

45.     During the employment, Plaintiff Joshua received the commissions of the investments he partook in only two times. However, he never received any written commission policy or statement of commissions earned and received.

46.     For the last week of Plaintiff Joshua's employment, from February 1, 2021 to February 3, 2021, he did not receive any compensation for his work.

***Plaintiff Lizbeth Bisono's Employment Information***

47.     In or around October 2017, Plaintiff Lizbeth Bisono ("Lizbeth") was hired by Defendants to work for them. Her job duties primarily consisted of administrative work, contracts drafting, and risk assessment. Later, in or around 2019, she took on new duties including supervising contracts drafting.

48.     On a day-to-day basis, Plaintiff Lizbeth reported to the supervisors of Defendants. She also had regular contact with Individual Defendant Andrew Fellus who would routinely assign her work, monitor her work performance, and direct the manner in which the work was performed.

49.     When Plaintiff Lizbeth started working for Defendants, she was told her schedule would be 9:30am to 6pm with a one-hour lunch break. However, during the relevant period, she in fact regularly worked outside of these hours to ensure all of his tasks were done. She was given a business email to communicate with her coworkers. Also, she was given access to a team business email to send the contracts she drafted to the brokers of Defendants.

50.     During the relevant period, Plaintiff Lizbeth never clocked in or out to track her work hours.

51.     From about October 2017 to about March 2020, Plaintiff Lizbeth routinely worked about 5 days a week, from 9:30am to between 6pm and 7pm without any uninterrupted lunch break. Additionally, the Individual Defendant and some other supervisors of Defendants, would

text or call her and require her to work outside of shifts. During this period, she worked between about 45 and 55 hours per week.

52.    From about March 2020 to about February 3, 2021, due to the COVID-19 Pandemic, Plaintiff Lizbeth worked from home during this period and worked more hours. She worked about 5-6 days a week, from 9:30am to between about 6pm and 11pm. Additionally, the Individual Defendant and some other supervisors of Defendants, would text or call her and require her to work outside of shifts. During this period, she worked about 60 hours per week. And for each week, she worked about two shifts in excess of 10 hours.

53.    During the employment, Plaintiff Lizbeth was paid at the fixed weekly rate regardless of the hours she worked. She was never compensated with an overtime premium rate for working more than 40 hours per week, nor was there an explicit understanding that her weekly rate would include overtime pay. She never received any accurate wage notice or statements.

54.    From about October 2017 to February 2018, she was paid $500 per week. From about March 2018 to about April 2018, she was paid $750 per week. From about May 2018 to about February 3, 2021, she was paid $900 per week.

55.    From about December 2018 to about February 3, 2021, Plaintiff Lizbeth also received the commissions of 0.0001 of the investments she would partake in. However, she never received any written commission policy or statement of commissions earned and received.

56.    For the last week of Plaintiff Lizbeth's employment, from February 1, 2021 to February 3, 2021, she did not receive any compensation for her work.


**-THIS PART LEFT INTENTIONALLY BLANK-**

***Plaintiff Vineliz Estevez's Employment Information***

57.     In or around November 2020, Plaintiff Vineliz Estevez ("Vineliz") was hired by Defendants to work as a Contracts Administrator. She had a diverse list of duties and responsibilities including but not limited to drafting contracts, and risk assessment.

58.     On a day-to-day basis, Plaintiff Vineliz reported to the supervisors of Defendants. She also had regular contact with Individual Defendant Andrew Fellus who would routinely assign her work, monitor her work performance, and direct the manner in which the work was performed.

59.     During the employment, Plaintiff Vineliz was given a business email to communicate with her coworkers. Also, she was given access to a team business email to send the contracts she drafted to the brokers of Defendants.

60.     During the employment, Plaintiff Vineliz worked from home due to the COVID-19 Pandemic, and she never clocked in or out to track her work hours.

61.     During the employment, Plaintiff Vineliz's regular work schedule was from about between 9am and 10am to between 5pm and 6pm, and she worked about 40 hours per week for the majority of her employment. Occasionally, she would work outside of schedules to complete the assigned work.

62.     Based on Plaintiff Vineliz's best recollections, for about five weeks during her employment, she worked beyond her regular work schedule and worked about 45 hours per week.

63.     During the employment, Plaintiff Vineliz was paid at the fixed weekly rate of $800 regardless of the hours she worked. She was never compensated with an overtime premium rate for working more than 40 hours per week, nor was there an explicit understanding that her weekly rate would include overtime pay. She never received any accurate wage notice or statements.

64.     For the last week of Plaintiff Vineliz's employment, from February 1, 2021 to February 3, 2021, she did not receive any compensation for her work.

**Defendants' Misclassification Practice Against Plaintiffs**

65.     At all relevant times, Defendants had a policy of classifying Plaintiffs as independent contractors, and not paying them overtime premium for hours worked more than forty per week.

66.     However, at all relevant times, Plaintiffs were non-exempt employees, and were misclassified by Defendants as independent contractors due to the following:

(1) Plaintiffs Isaac, Joshua and Lizbeth were told by Defendants that they would be classified as independent contractors at the beginning of their employment. However, there was no written independent contractor agreement ever presented to them. Nor was there any written document indicating any independent contractor agreement.

(2) All Plaintiffs worked the schedules set by Defendants, and directly reported their work to the Individual Defendant and/or the supervisors worked for Defendants.

(3) Defendant Andrew Fellus controls both the results to be accomplished by all Plaintiffs and the "manner and means" by which all Plaintiffs bring about that result.

**Defendants' Discriminatory Practices Against Plaintiffs**

67.     Plaintiffs Isaac, Joshua, Lizbeth, and Vineliz are Dominicans.

68.     During the relevant period, Defendants Andrew Fellus would routinely deprive Plaintiffs Isaac and Joshua of opportunities to earn commissions by diverting opportunities from them and other employees of Dominican descent to individuals who followed the same religion and were the same ethnicity as Mr. Fellus.

69.     During the relevant period, although Plaintiff Lizbeth was promoted to be the supervisor of Defendants' contracts team, she was still paid the same as her male subordinates.

70.     During the relevant period, ethnically Dominican employees suffered stricter disciplinary action than other employees who followed the same religion and were the same ethnicity as Mr. Fellus.

71.     On February 3, 2021, Plaintiffs Isaac, Joshua, Lizbeth, and Vineliz were terminated with no basis. This termination followed two other Hispanic employees being terminated approximately one year prior.

72.     Defendants sweepingly terminated Plaintiffs, who are Dominican employees, while Defendants did not take any action against employees of other national origin and ethnicity.

## FIRST CAUSE OF ACTION

## UNPAID WAGES IN VIOLATION OF THE FLSA

73.     Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

74.     At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

76.     At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

77.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

78.    Plaintiffs were entitled to be paid at a level at or above minimum wage for all hours worked. Plaintiffs were entitled to be paid at the regular rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

79.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for all hours worked in excess of forty (40) hours per work week, which violated the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

80.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiffs.

81.    Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l(c) and 215(a).

82.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

83.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

84.    Due to the reckless, willful, and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage and overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

85.     Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### UNPAID WAGES IN VIOLATION OF THE NYLL

86.     Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

87.     At all relevant times, Defendants employed Plaintiffs within the meaning of New York Labor Law §§ 2 and 651.

88.     Defendants knowingly and willfully violated the rights of Plaintiffs by failing to pay Plaintiffs the applicable minimum wages and required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

89.     Employers are required to pay a "spread of hours" premium of one (1) additional hour pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.

90.     Defendants knowingly and willfully violated the rights of Plaintiffs by failing to pay "spread of hours" premium to Plaintiffs for each day he worked in excess of ten (10) hours.

91.     Defendants failed to properly disclose or apprise Plaintiffs of their rights under the NYLL.

92.     Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

93.     Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each

employee, in contravention of the New York Labor Law§ 194(4), and New York State Department of Labor Regulations.

94.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants the difference between their actual wages and the amounts owed under the New York Labor Law. The deficiency accounts for regular rates for all straight time hours, overtime compensations for all overtime hours, "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law§§ 663(1), 198.

95.    Plaintiffs are also entitled to liquidated damages pursuant to New York Labor Law§ 663(1), as well as civil penalties and liquidated damages pursuant to the New York State Wage Theft Prevention Act.

### THIRD CAUSE OF ACTION

### FAILURE TO PROVIDE THE WAGE NOTICE AND WAGE STATEMENT
### IN VIOLATION OF THE NYLL

96.    Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

97.    Defendants have willfully failed to supply Plaintiffs with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing

address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

98.     Through Defendants' knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

99.     Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

100.    Through Defendants' knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

101.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b ).

102.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each,

reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## FOURTH CAUSE OF ACTION

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE NYSHRL

103.   Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

104.   By the actions described above, Defendant discriminated against Plaintiffs on the basis of their national origin in violation of the NYSHRL by terminating Plaintiffs' employment.

105.   Under the NYSHRL, it is unlawful for an employer to fire or refuse to hire or otherwise discriminate against an employee because of a national origin. Executive Law § 296 (1) (a).

106.   Defendants sweepingly terminated all Dominican employees, including Plaintiffs, while Defendants did not take any action against employees of other national origin and ethnicity.

107.   Defendants willfully violated the NYSHRL because Defendants intentionally discriminated against and terminated Plaintiffs on the basis of their national origin.

108.   As a direct and proximate result of Defendant' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continues to suffer, harm for which they are entitled to an award of monetary damages and other relief, in addition to costs and reasonable attorneys' fees pursuant to N.Y. Exec. Law § 297(10) and punitive damages pursuant to § 297(4)(c).

**-THIS PART LEFT INTENTIONALLY BLANK-**

## FIFTH CAUSE OF ACTION

## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE NYCHRL

109.    Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

110.    By the actions described above, among others, Defendant discriminated against Plaintiffs on the basis of their national origin in violation of the NYCHRL by terminating Plaintiffs' employment.

111.    Under the NYCHRL, it is unlawful for an employer to fire or refuse to hire or otherwise discriminate against an employee because of a national origin. Administrative Code § 8-107(1)(a).

112.    Defendants sweepingly terminated all Dominican employees, including Plaintiffs, while Defendants did not take any action against employees of other national origin and ethnicity.

113.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continues to suffer, harm for which they are entitled to an award of monetary damages and other relief, in addition to costs and reasonable attorneys' fees pursuant to § 8-502(g).

114.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiffs are entitled to an award of punitive damages pursuant to § 8-502(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Isaac Bisono; Joshua Perez; Lizbeth Bisono; and Vineliz Estevez, respectfully request that this Court grant the following relief:

i.     A declaratory judgment that the actions, conduct, and practices of Defendants

complained of violate the FLSA and the applicable state laws;

ii.   An award for unpaid minimum wage and unpaid overtime compensation due under the FLSA and NYLL;

iii.  An award for unpaid spread-of-hours premium due under the NYLL;

iv.   An award of liquidated damages and/or punitive damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

v.    An award of liquidated damages and/or punitive damages as a result of Defendants' failure to pay minimum wage, overtime, and spread-of-hours compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

vi.   An award of liquidated and/or punitive damages as a result of Defendants' willful violation of the New York State Human Rights Law, as amended, on the basis of discrimination based on national origin;

vii.  An award of liquidated and/or punitive damages as a result of Defendants' willful violation of the New York City Human Rights Law, as amended, on the basis of discrimination based on national origin;

viii. An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

ix.   An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

x.    An award of prejudgment and post-judgment interest;

xi.   An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. 216(b) and the NYLL; and

xii.  Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated:  New York, New York
        August 9, 2021

                                Respectfully Submitted,


                        **LAW OFFICE OF MOHAMMED GANGAT**

                By:  _____
                        Mohammed Gangat, Esq.
                        675 Third Avenue, Suite 1810
                        (718) 669-0714
                        mgangat@gangatllc.com

                        *Attorneys for Plaintiffs*